IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Jerome H. McDaniel, #166436, | ) | |
| | ) | C/A No. 1:09-1348-MBS |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| ——————————————— | ) | |

Jerome H. McDaniel ("Petitioner") is a prisoner in the custody of the South Carolina

Department of Corrections ("SCDC") currently serving a 110-year sentence for first degree burglary,

assault and battery of a high and aggravated nature ("ABHAN"), strong arm robbery, kidnapping,

and first degree criminal sexual conduct. On May 13, 2009, Petitioner filed a pro se petition for writ

of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Habeas Petition"). ECF No. 1. This matter is

before the Court on Respondent's Motion for Summary Judgment, filed on October 14, 2009. ECF

No. 22. For the reasons set forth below, the court grants Respondent's motion for summary

judgment and dismisses Petitioner's Habeas Petition with prejudice.

I.      **BACKGROUND**

        A.      **State Proceedings**

        Petitioner is currently confined at the Perry Correctional Institution of the SCDC. In June

1993, Petitioner was indicted on charges of (1) first degree burglary; (2) ABHAN; (3) strong arm

robbery; (4) kidnapping; and (5) first degree criminal sexual conduct. Indictments, ECF No. 27-4

at 21–30. Petitioner was accused of forcing his way into an apartment late one night in August 1992

and assaulting the two women he found there before forcing one of them to leave the apartment with him in his car, where he forced her to perform oral sex, raped her, and stole her jewelry. See State v. McDaniel, 462 S.E.2d 882, 882 (S.C. Ct. App. 1995). Petitioner gave a statement in which he admitted that he had sexual intercourse with the victim, but he claimed that it was a consensual encounter. See Appellant's Final Br. 9, ECF No. 27-4 at 40.

Petitioner was tried twice by a jury on these charges. At the first trial he was represented by public defenders Bill Nettles and Frank Draper. He testified in his own defense and was convicted on all counts. See McDaniel, 462 S.E.2d at 882–83. Petitioner appealed and the South Carolina Court of Appeals reversed and remanded for a new trial, because the solicitor, in closing argument, "improperly urged the jurors to put themselves in the place of the victim, thus appealing to their prejudice and passion." Id. at 883. Petitioner was tried for a second time in October 1997. Mr. Draper again represented him; this time, Mr. Draper was assisted by co-counsel James Brown, Jr. The jury again found Petitioner guilty on all counts and the court sentenced him to ten years on the ABHAN conviction, ten years on the strong-arm robbery conviction, thirty years on the kidnapping conviction, thirty years on the first degree criminal sexual assault conviction, and thirty years on the first degree burglary conviction, to be served consecutively for a total of 110 years. Trial Tr. 811:15–812:12, ECF No. 26-4 at 15–16; Sentencing Tr. 826:14–827:1, ECF No. 26-4 at 28–29.

Petitioner timely appealed. Petitioner's appellate counsel Daniel T. Stacey presented two issues for review by the South Carolina Court of Appeals:

1.   Whether the court erred when it overruled the defense's motion pursuant to Batson v. Kentucky, where the solicitor's proffered reason for striking a black juror was pretextual, thus requiring a new trial?

2.   Whether the court erred when it permitted the solicitor to argue on closing

that the job of the defense lawyer is to muddy the waters because this argument improperly disparaged the defense, and was outside the record and the reasonable inferences to be drawn from it?

Appellant's Final Br. 3, ECF No. 27-4 at 34. The South Carolina Court of Appeals affirmed Petitioner's convictions in an unpublished opinion filed on February 8, 2000. S.C. App. Ct. Unpublished Op. No. 2000-UP-062, ECF No. 27-4 at 76. Petitioner's request for a rehearing was denied on April 28, 2000. See Pet. for Reh'g, ECF No. 23-3; S.C. App. Ct. Order 1, ECF No. 23-4. The Remittitur issued on June 8, 2000. S.C. App. Ct. Letter of Remittitur 1, ECF No. 23-5.

Petitioner filed a timely application for post-conviction relief (the "PCR Application"), pro se, in which he asserted the following grounds for relief:

1. Petitioner's constitutional rights were violated when the court and counsel started voir dire without Petitioner's being present and without Petitioner's waiver of his right to be present, PCR Appl., ECF No. 27-2 at 45;

2. Trial counsel was ineffective for failing to move to dismiss the petit jury, which did not represent a fair cross-section of the community—specifically, Hispanics were substantially under-represented and there were no women between the ages of 18 and 34 in the panel, id.;

3. Trial counsel was ineffective for failing to move to squash the grand jury indictments, id. at 46;

4. The grand jury was "unconstitutionally drawn in violation of FAIR CROSS-SECTION ACT," id. (emphasis in original);

5. The prosecutor engaged in misconduct in the grand jury proceedings by improperly vouching for the credibility of the State's case and failing to call any witnesses other than a law enforcement officer to testify in support of the indictment, id. at 46–47;

6. Trial counsel was ineffective for exercising juror challenges in a discriminatory manner when he struck three non-white jurors without Petitioner's involvement or consent, id. at 50;

7. Trial counsel was ineffective for denying Petitioner his Sixth Amendment "right to present favorable testimony by failing to allow [Petitioner] to testify [on] his own

behalf," id.;

8. The trial court abused its discretion when it ruled that the solicitor's peremptory challenges were race-neutral, denying Petitioner's <u>Batson</u> motion, id. at 51;

9. The police secured the arrest warrant without probable cause, in violation of Petitioner's constitutional rights, id. at 52;

10. The police violated Petitioner's constitutional rights by securing a search warrant more than 48 hours after Petitioner's arrest, id.;

11. The trial court abused its discretion in permitting the admission of evidence obtained pursuant to defective search warrants, id.;

12. The trial court abused its discretion in permitting the solicitor to use or solicit victim impact testimony, id.;

13. The trial court abused its discretion by not allowing defense counsel to elicit testimony to counter the victim impact testimony that would have shown "that victim [sic] conduct was wholly Probative to adulturous [sic] conduct" and other evidence that Petitioner described as evidence about the victim's "character," id. at 53; and

14. The trial court abused its discretion when it did not permit the defense to introduce evidence of the victim's husband's prior conviction for impeachment purposes, id. at 54.

On April 27, 2005, the Honorable G. Thomas Cooper, Jr., held a hearing on Petitioner's PCR Application in the Court of Common Pleas for Richland County (the "PCR Hearing"). <u>See</u> PCR Hr'g Tr. 1, ECF No. 27-2 at 63. Petitioner was represented by attorney Tara Dawn Shurling. <u>Id.</u> Ms. Shurling orally advised the court that, in addition to the claims listed above, Petitioner alleged that his trial counsel was ineffective for not properly counseling him on a plea that he was offered and rejected. <u>Id.</u> at 9:19–10:20. Specifically, Petitioner claimed that had he understood that the "so-called 85 percent rule would not have applied to him," "he would have seriously considered and probably taken the State's offer for a 24-year deal." <u>Id.</u> at 10:10–14.

Ms. Shurling further advised the court that Petitioner sought to convert two of his allegations

that trial counsel had been ineffective into claims that his appellate counsel had been ineffective for failing to raise the relevant issues on appeal. Thus, Petitioner revised his allegations to assert that appellate counsel was ineffective for not challenging (1) the trial court's admission of the victim's testimony about how the rape had affected her, id. at 16:13–18; and (2) the trial court's refusal to permit defense counsel to impeach the victim's husband by specifically inquiring into his prior federal conviction. Id. at 17:21–25.

The court then heard testimony from Petitioner and one of the attorneys that represented him at the second trial, Mr. Brown. At the conclusion of the testimony, the court agreed to hold the record open so that the parties could attempt to depose Petitioner's lead trial counsel, Mr. Draper, who had since moved from South Carolina. Id. at 53:19–54:6. Mr. Draper was deposed by telephone on July 12, 2006. See Telephonic Dep. Tr., ECF No. 27-3 at 44.

On November 8, 2007, Judge Cooper issued an Order of Dismissal denying Petitioner's PCR Application and dismissing it, with prejudice. ECF No. 27-4 at 2–13. Petitioner filed a Rule 59(e) Motion to Alter or Amend Judgment, pro se, which was also subsequently denied. See Order 1 (Mar. 17, 2008), ECF No. 27-4 at 17.

Ms. Shurling timely filed an amended notice of appeal before turning the file over to the South Carolina Office of Appellate Defense for perfection. See Letter from Ms. Shurling to Judge Daniel E. Shearouse 1 (Mar. 26, 2008), ECF No. 27-4 at 18; Am. Notice of Appeal, ECF No. 27-4 at 19. Appellate Defender LaNelle C. DuRant filed a Petition for Writ of Certiorari on Petitioner's behalf, which presented a single issue for review: "Did the PCR court err in failing to find trial counsel ineffective for not allowing Petitioner to testify in his own behalf?" Writ of Cert. 3, ECF No. 23-6 at 3. At the same time, consistent with the procedure approved by the South Carolina

Supreme Court in <u>Johnson v. State</u>, 364 S.E.2d 201, 201 (S.C. 1988), Ms. DuRant requested that the Court relieve her as counsel, stating that she had reviewed the records and transcript of the PCR hearing and, in her opinion, "seeking certiorari from the order of dismissal is without merit," but that she had "briefed the one arguable legal issue which arose during the [PCR] process." Pet. To Be Relieved As Counsel 9, ECF No. 23-6 at 10.

On January 8, 2009, the South Carolina Supreme Court denied the petition and granted counsel's request to withdraw. S.C. Supreme Ct. Order 1, ECF No. 23-8. The Remittitur issued on January 26, 2009. S.C. Supreme Ct. Letter of Remittitur 1, ECF No. 23-9.

### B.    Habeas Petition

Petitioner filed the instant Habeas Petition on May 13, 2009, raising the following thirteen issues:

> **Ground One:** Appellate counsel violated Petitioner['s] 6th [and] 14th Amendment [rights] for failing to raise [the] issue that the presiding judge improperly allowed victim impact testimony.
>
> **Ground Two:** Appellate counsel violated Petitione[r']s 6th [and] 14th Amendment [rights] for fail[ing] to raise [the] issue that [the] trial judge erred in refusing to allow trial counsel to question a witness specifically about his prior federal record.
>
> **Ground Three:** Trial counsel violated Petitioner['s] Due Process right, 6th Amendment, in that counsel did not require Petitioner['s] presence during the beginning stage of trial, proposed voir dire.
>
> **Ground Four:** Trial counsel was in violation of Petitioner['s] 6th Amendment [rights] for not adequately advising Petitioner of plea offer.
>
> **Ground Five**: Trial counsel violated Petitioner['s] 6th [and] Fourteenth Amendment [rights] for not moving to quash kidnapping indictment as being overbroad for failing to give sufficient notice of specifically what conduct constituted kidnapping.
>
> **Ground Six:** Trial counsel violated Petitioner['s] 6th [and] 14th Amendment [rights] for failing to move to quash the search warrant which was secured more than 48

hours after Petitioner's arrest.

**Ground Seven:** Trial counsel violated Petitioner['s] 6th Amendment [rights] for striking two African-American members and one Hispanic member from the jury pool, depriving Petitioner of an accurate cross-section of the community.

**Ground Eight:** Trial counsel was in violation for denying Petitioner[] his 6th Amendment right to present favorable testimony by failing to allow Petitioner to testify in his own behalf.

**Ground Nine:** Trial court was in violation of Petitioner['s] 5th [and] 14th Amendment [rights] when it permitted the solicitor to argue improperly on closing toward defense counsel representation.

**Ground Ten:** Trial court was in violation of Petitioner['s] 14th Amendment [rights] when it overruled the defense's motion pursuant to "Batson" Violation where solicitor's proffered reason for striking a black juror was pretextual.

**Ground Eleven:** Trial counsel was in violation of Petitioner['s] 4th Amendment [rights] for failing to make motion to supress [sic] Petitioner['s] arrest warrant affidavi[t]; based on the erronious [sic] and recklessly bad faith exception.

**Ground Twelve:** Trial counsel violated Petitioner['s] Due Process right, [by] failing to do a factual investigation in this case to examine the State[']s evidence. 5th, 6th, 14th Amendment.

**Ground Thirteen:** Trial counsel violated Petitioner['s] 5th [and] 14th Amendment [rights] when he fail[ed] to object to the solicitor['s] improper argument on closing where solicitor appealed to the jury to act as a "conscience" for the "community."

Habeas Pet. 6–11, ECF No. 1 at 5–10; Memo. In Support of Habeas Pet. 9–20, ECF No. 10-1 (emphases in original).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Thomas E. Rogers, III, for pretrial handling. On October 14, 2009, Respondent filed a motion for summary judgment. ECF No. 22. As required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge issued an order on October 15, 2009, advising Petitioner of the summary judgment motion and dismissal procedures and the possible

consequences if he failed to respond adequately. Roseboro Order, ECF No. 28. Petitioner sought

and was granted an extension of time to respond to the motion for summary judgment, ECF No. 30;

he filed a response in opposition on December 18, 2009. ECF No. 33.

On March 31, 2010, the case was reassigned to Magistrate Judge Shiva V. Hodges and on

August 3, 2010, Magistrate Judge Hodges issued a Report and Recommendation (the "R&R"), which

recommends that Respondent's motion for summary judgment be granted. R&R 32, ECF No. 39.

Specifically, the Magistrate Judge recommends that the court find that Petitioner is procedurally

barred from pursuing Grounds Eleven, Twelve, and Thirteen and that each of Petitioner's remaining

claims fail on their merits. Id. at 15–32. Petitioner sought and was granted an extension of time to

file objections to the R&R. ECF Nos. 41, 42. He filed objections on September 10, 2010. Pet'r's

Objections, ECF No. 45.

## II.    **STANDARD OF REVIEW**

This court's review of the Habeas Petition is governed by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA's amendments to 28 U.S.C. §

2254, a petition filed by a petitioner in state custody

> shall not be granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim—(1) resulted in a
> decision that was contrary to, or involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme Court of the United States;
> or (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The court must give the factual findings of the state court judge great

deference and presume them to be correct, unless the petitioner shows otherwise by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

8

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight—the ultimate responsibility for making a final determination remains entirely with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the R&R to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### III. DISCUSSION

Petitioner's objections address the Magistrate Judge's substantive evaluation of Grounds One through Ten, the vast majority of which are ineffective assistance claims. He does not object to the Magistrate Judge's recommendation that the court find that Grounds Eleven, Twelve and Thirteen are procedurally barred. See R&R 15, ECF No. 39.

The court addresses each of Petitioner's specific objections below, in accordance with their general subject matter.

#### A. Ineffective Assistance

To prove ineffective assistance, Petitioner must show that counsel's performance was constitutionally deficient under the two-part test announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The Strickland test is applied whether the claim of ineffective assistance is based on the performance of trial or appellate counsel. Lawrence v. Branker, 517 F.3d 700, 712 (4th Cir. 2008) (applying Strickland to a habeas petition alleging ineffective assistance of appellate counsel). The first prong of Strickland requires that Petitioner demonstrate that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. In applying Strickland to any claim of ineffective assistance, "[a] lawyer's performance is entitled

to a strong presumption of reasonableness," <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993) (citing <u>Evans v. Thompson</u>, 881 F.2d 117, 124 (4th Cir. 1989)), and in reviewing a claim that appellate counsel was ineffective, counsel is entitled to a presumption that the decision to pursue certain claims but not others was based on a decision by counsel as to "which issues were most likely to afford relief on appeal." <u>Id.</u> Appellate counsel is not required to raise every conceivable nonfrivolous issue on appeal in order to be effective: "[the] process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986) (quoting <u>Jones v. Barnes</u>, 463 U.S. 745, 751–52 (1983)). <u>Strickland</u>'s second prong requires the petitioner to show that the deficient performance actually prejudiced his defense. <u>Strickland</u>, 466 U.S. at 687. In other words, the petitioner must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." <u>Id.</u>

### 1. *Appellate Counsel's Failure To Challenge Victim Impact Testimony.*

In Ground One, Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court abused its discretion when it permitted the State to solicit testimony from the victim regarding the effect that the rape had had on her. Habeas Pet. 6, ECF No. 1; Memo. In Support of Habeas Pet. 3, ECF No. 1-1. The Magistrate Judge recommended that this claim be dismissed, citing South Carolina Supreme Court precedent that "[t]rauma testimony of a rape victim is relevant to prove the elements of criminal sexual conduct since such evidence makes it more or less probable that the offense occurred . . . [and] such evidence [is] admissible where its probative value outweighs its prejudicial effect." R&R 16, ECF No. 39 (citing <u>State v. Alexander</u>, 401 S.E.2d

146, 149 (S.C. 1991)). Petitioner objects to the Magistrate Judge's recommendation, arguing that in South Carolina, victim impact evidence is not admissible in a non-capital case. Pet'r's Objections 1, ECF No. 45.

Petitioner's objection is without merit. The opinion that Petitioner cites in support does not hold that such evidence is not admissible in a non-capital case; it merely states that, "[v]ictim impact evidence is admissible in South Carolina, and the State is permitted to make arguments regarding that evidence during the sentencing phase of a death penalty trial." Humphries v. State, 570 S.E.2d 160, 166 (S.C. 2002). Indeed, State v. Alexander, which the Magistrate Judge cites in support of her recommendation, was not a capital murder case. Like Petitioner, Alexander was charged with and convicted of armed robbery, kidnapping, and criminal sexual conduct in the first degree. Alexander, 401 S.E.2d at 147. On appeal the defendant argued "that he was prejudiced because the trial court permitted the prosecuting witness to testify about her mental trauma which allegedly resulted from the incident." Id. The issue was a matter of first impression for the South Carolina Supreme Court which, after reviewing cases from other jurisdictions, held that testimony of a rape victim's "mental trauma is relevant to prove the elements of criminal sexual conduct, including the lack of consent," because "[e]vidence of behavioral and personality changes tends to establish or make more or less probable that the offense occurred." Id. at 149.

### 2. *Appellate Counsel's Failure To Challenge Court's Ruling Regarding Scope of Permissible Impeachment Of State's Witness On Basis Of Federal Conviction.*

In Ground Two, Petitioner asserts that appellate counsel was ineffective for failing to argue that the trial court erred when it refused to allow trial counsel to ask certain questions of the victim's

husband "Terrell"[1] about his prior federal record.  Habeas Pet. 7, ECF No. 1; Memo. In Support of

Habeas Pet. 4–5, ECF No. 1-1.

> [Terrell] had a federal record for . . . submitting falsified information on an
> application for a loan on a car. . . . [D]efense counsel took the position that was fraud
> and that it went to moral turpitude and that he should be allowed to impeach on the
> basis of that offense.  The Court sort of in a [Solomon]-like manner split the baby .
> . . .  He didn't allow defense counsel to ask this gentleman about having a federal
> conviction, but he did allow the defense to ask him whether or not he had in fact at
> one point presented an application bearing false information in a loan application.
> It's [Petitioner]'s position that the presence of conduct that has risen to the level of
> a criminal conviction is very important for purposes of impeachment, that the manner
> in which . . . [the defense was] limited to presenting the information, minimized the
> effect of that information in terms of its impeachment potential; and therefore, that
> the trial Court was in error.

PCR Hr'g Tr. 16:21–17:19, ECF No. 27-3 at 3–4.

Petitioner argues generally that the Magistrate Judge's recommendation that this claim be

dismissed was erroneous, but does not specifically respond to anything in the Magistrate Judge's

analysis.  Instead, he simply restates his substantive arguments as to why he believes he should have

been permitted to inquire specifically into the fact of the conviction.  See Pet'r's Objections 2, ECF

No. 45.  The court has examined the record and finds that Petitioner has failed to establish this claim

of ineffective assistance of counsel.  He has neither demonstrated that appellate counsel's decision

not to pursue this claim was an unreasonable decision as to which claims were most likely to succeed

on appeal, nor has he shown that failure to pursue this claim actually prejudiced him.  See R&R 18,

ECF No. 39.

### 3. Trial Counsel's Failure To Demand Petitioner's Presence At All Stages Of Trial.

In Ground Three, Petitioner alleges that trial counsel violated his Due Process and Sixth

---

[1]     The victim's and her husband's last name is redacted throughout the record.

Amendment rights by not requiring that Petitioner be present "during the beginning stage of trial, proposed voir dire." Habeas Pet. 9, ECF No. 1. Petitioner restates his substantive arguments as to why he believes that his constitutional rights were violated when he was not promptly brought into the courtroom at a "critical" stage in the proceedings, but does not object specifically to anything in the R&R. See Pet'r's Objections 2, ECF No. 45.

The court has independently reviewed the record and hereby finds that it does not support Petitioner's claim that he was not present for proposed voir dire. On the first morning of trial, the trial judge made some preliminary remarks to the attorneys about the order in which matters would proceed before asking defense counsel, "Do you need the defendant present while we do the proposed voir dire?" Trial Tr. 9:21–22, ECF No. 24-1 at 12. Mr. Draper answered in the affirmative and Petitioner was brought out to join his attorneys in the courtroom. See id. at 10:2–4. The court agrees with the Magistrate Judge's conclusion that "[t]he brief interval in which Petitioner was absent from the courtroom was not a critical stage of his trial." R&R 19, ECF No. 39. As such, the court finds that Petitioner could not have been subject to, and has failed to demonstrate any, prejudice as a result; his claim must, therefore, be dismissed.

### 4. *Trial Counsel's Failure To Adequately Advise Petitioner About Probationary Eligibility Under Rejected Plea Offer.*

In Ground Four, Petitioner alleges that trial counsel violated his Sixth Amendment rights as follows:

> At the PCR hearing, petitioner testified that he thought he would have to serve 85% of the 24-year plea offer by the State. His counsel failed to advise him that since his crime(s) pre-dated the 85% law he would only have to serve 65% of the 24 years offered by the state. He testified that counsel was ineffective for failing to properly advis[e] him of the consequence of the plea.

Pet'r's Objections 3, ECF No. 45; <u>see also</u> Habeas Pet. 11, ECF No. 1.

The "85% law" to which Petitioner refers was enacted in 1995 and provided, in relevant part: "a prisoner convicted of a 'no parole offense' as defined in Section 24-13-100 and sentenced to the custody of the Department of Corrections . . . is not eligible for early release, discharge or community supervision . . . until the prisoner has served at least eighty-five percent of the actual term of imprisonment imposed." S.C. Code Ann. § 24-13-150(A) (Supp. 1997). Petitioner does not allege that he specifically asked his counsel whether he would be subject to the 85% rule or that his counsel specifically advised him that he would be subject to the rule; he claims only that counsel failed to advise him that the rule would have been inapplicable to his crimes.

The South Carolina Supreme Court rejected a similar claim in <u>Randall v. State</u>, 591 S.E.2d 608 (S.C. 2004), when it reversed the PCR court's ruling that counsel was ineffective for failing to advise the petitioner that, if convicted, he would be required to serve 85% of his sentence prior to becoming eligible for parole. <u>Id.</u> at 609. In doing so, the court noted that it "has repeatedly acknowledged that normally, parole eligibility is a collateral consequence of sentencing of which a defendant need not be specifically advised before entering a guilty plea." <u>Id.</u> at 609–10 (citing cases); <u>see also</u> <u>Smith v. State</u>, 494 S.E.2d 626, 628 (S.C. 1997) (stating unless counsel gives erroneous advice, parole information is not a ground for collateral attack of a guilty plea). South Carolina's decisions in this area are consistent with decisions by the Fourth Circuit and other federal circuits. <u>See, e.g.</u>, <u>Strader v. Garrison</u>, 611 F.2d 61, 65 (4th Cir. 1979) (holding "parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire . . . [unless] he is grossly misinformed about it by his lawyer, and

relies upon that misinformation").[2] Against this background, the court finds that Petitioner has failed to show that the PCR court unreasonably applied federal law to this claim.

> **5.** ***Trial Counsel's Failure To Move To Quash Kidnapping Indictment.***

In Ground Five, Petitioner alleges that trial counsel was ineffective for failing to move to quash the kidnapping indictment. <u>See</u> Memo. In Support of Habeas Pet. 9, ECF No. 1-1. Petitioner argues that the indictment was unconstitutionally overbroad, because while it recited the language of the kidnapping statute, it "did not include enough specific allegations of [Petitioner's] conduct on the evening of the crime which amounted to a kidnapping charge." Pet'r's Objections 3, ECF No. 45.

The statute provides:

> Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years unless sentenced for murder as provided in Section 16-3-20.

S.C. Code Ann. § 16-3-910.

---

[2]   Petitioner does not allege that his counsel "grossly misinformed" him about his parole eligibility, but even if counsel had told Petitioner that he would not be eligible for parole until he had served 85% of his sentence, the difference between that estimated parole eligibility date (i.e., eligibility at 20.4 years of a 24 year sentence) and an estimated date based on an assumption that he would have served 65% of his sentence (i.e., eligibility at 15.6 years), is only 4.8 years, or a difference of approximately 24%. However, the Fourth Circuit has affirmatively held, in an unpublished opinion, that "a disparity between defendant's maximum estimated parole eligibility date and the actual parole eligibility date of only approximately 33% does not rise to the level of gross misinformation." <u>United States v. Crisp</u>, No. 90-7395, 1991 WL 43201, at **2 (4th Cir. Apr. 2, 1991). If a 33% disparity is insufficient to sustain an ineffective assistance claim, then a 24% disparity would most certainly be as well.

The indictment alleged:

> That JEROME McDANIEL did in Richland County on or about the 2nd day of August, 1992, unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any person, to wit, [the victim], by any means whatsoever without authority of law.

Kidnapping Indictment 1, ECF No. 27-4 at 28.

The indictment specifically identified both the time and place of the alleged crime; it also named Petitioner's alleged victim. Such allegations are sufficient to sustain the indictment. See, e.g., United States v. Mayo, 705 F.2d 62, 77–78 (2d Cir. 1983) (finding indictment for illegal transfer of a firearm sufficient where it tracked the language of the statute and specified the time and place of the allegedly illegal transfer); see also United States v. Izuogu, Nos. 90-5778, 89-5706, 1991 WL 21653, at **3 (4th Cir. June 3, 1991) ("As a general rule, indictments are sufficient if they track the language of the statute and state the time and place of the offense in approximate terms.") (citations omitted). The court therefore finds that Petitioner has failed to demonstrate that rejection of this claim was an unreasonable application of federal law.

### 6. *Trial Counsel's Failure To Move To Quash Search Warrant.*

In Ground Six, Petitioner alleges that trial counsel was ineffective for failing to move to quash a search warrant that he claims was secured more than 48 hours after Petitioner was illegally arrested without probable cause. See Memo. In Support of Habeas Pet. 10, ECF No. 1-1; Pet'r's Objections 3–4, ECF No. 45. The Habeas Petition does not clearly state the basis for Petitioner's claim that he was arrested without probable cause, but at the PCR Hearing Petitioner's counsel gave the following explanation:

> The arrest warrant . . . indicates that among the items stolen from [the victim] that evening were $300 in rent money. During the trial [the victim] admit[ted] that she

signed the arrest warrant and that that information is in the arrest warrants, but she [said] that is not accurate, that no money was stolen from her.

PCR Hr'g Tr. 13:24–14:5, ECF No. 27-2 at 75, ECF No. 27-3 at 1. Based on this testimony, Petitioner takes the position "that once it was discovered that part of the information contained in the affidavit which supported the arrest warrant was in fact falsified that at that point defense counsel should have moved to quash the indictments and end the trial." Id. at 14:6–11, ECF No. 27-3 at 1.

The mere fact that the victim testified that the warrant inaccurately stated that $300 in rent money was stolen from her is not proof that the warrant was issued without probable cause and, after an independent review of the record, the court finds that Petitioner failed to present evidence to support his claim that his arrest was not based on probable cause. Furthermore, as the Magistrate Judge found, Petitioner's claim that the search warrant was improperly submitted more than 48 hours after the arrest warrant is contrary to the record. See R&R 25, ECF No. 39.

### 7. *Trial Counsel's Discriminatory Use Of Peremptory Challenges.*

In Ground Seven, Petitioner alleges that trial counsel was ineffective because he struck, from the jury pool, two potential jurors who were African-American and one who was Hispanic, thereby exercising peremptory challenges "in a discriminatory manner" that deprived Petitioner of a jury representative of "an accurate cross-section of the community." Memo. In Support of Habeas Pet. 11, ECF No. 1-1. The Magistrate Judge recommends that the court find that Petitioner failed to establish that trial counsel ineffectively handled jury selection; thus, he has not shown that the PCR court unreasonably applied federal law in addressing and rejecting this claim. R&R 26, ECF No. 39. Petitioner objects, arguing that "[i]n this particular instance trial counsel operated under a conflict of interest," which resulted in a violation of Petitioner's Sixth Amendment rights. Pet'r's

Objections 4, ECF No. 45 (citing Cuyler v. Sullivan, 446 U.S. 335 (1985)). Petitioner does not specify the "conflict of interest" to which he refers.[3]

As an initial matter, the law makes a distinction between the jury venire and the petit jury. The "jury venire" is the larger pool from which the jury that will ultimately hear a case is culled. See BLACK'S LAW DICTIONARY 1556 (6th ed. 1990) (defining "venire" as "[t]he group of citizens from whom a jury is chosen in a given case"). A "petit jury" is the jury actually selected to hear the defendant's case. The United States Constitution requires that a criminal defendant receive a jury venire that reflects "a fair cross section of the community," but "[there is] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive grounds in the population. Defendants are not entitled to a jury of any particular composition . . . ." Taylor v. Louisiana, 419 U.S. 522, 530, 538 (1975). As such, Petitioner's challenge is properly understood as made pursuant to the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986), which established that, "[t]he use of peremptory challenges to strike venire-persons based on their race violates the equal protection component of the Due Process clause of the Fifth Amendment." United States v. Montgomery, 210 F.3d 446, 453 (5th Cir. 2000); see also Batson, 476 U.S. at 89.

There are at least three reasons why Petitioner cannot show that, in rejecting this claim, the PCR Court unreasonably applied federal law or unreasonably determined the facts. First, courts use a three-step analysis to determine whether a peremptory strike was exercised in a racially discriminatory manner. The first step requires that the opponent of the strike raise the issue before

---

[3]     The alleged "conflict of interest" at issue in Cuyler was defense counsel's simultaneous representation of three defendants, all of whom were charged with the same murders. See 446 U.S. at 335. Nothing in the record indicates that Petitioner's counsel represented any other defendants in this matter.

the trial court by making a prima facie showing that the party exercising the strike did so on the basis of race. See Purkett v. Elem, 514 U.S. 765, 767–68 (1995). At the time of jury selection, Petitioner did not inform his counsel or the court that he believed counsel was improperly utilizing his peremptory challenges. Petitioner admits that he left the jury selection to his attorney and, when his attorney explicitly asked him how he felt about the selection, Petitioner did not indicate that he was in any way unhappy with his attorney's decisions:

> Q. Okay. Now, with regard to jury selection, did you participate with your lawyer in picking a jury?
>
> A. No, ma'am. I let him handle that. I had told him—it's on the record—that he asked me a question about what I think about that jury. And I told him he is the lawyer, you make that decision for me.

PCR Hr'g Tr. 20:18–23, ECF No. 27-3 at 7. Second, defense counsel filed a Batson motion challenging the solicitor's use of a peremptory challenge to strike a potential juror who was African American, and in examining that motion, both the trial court and the South Carolina Court of Appeals held that the remainder of the jury selection process supported a finding that there was no discriminatory intent. See Trial Tr. 82:18–83:15, ECF No. 24-2 at 10–11; S.C. App. Ct. Unpublished Op. No. 2000-UP-062 (Feb. 8, 2000) 2–3, ECF No. 27-4 at 77–78. In particular, both cited the fact that the petit jury included four African American jurors, including the alternate. Trial Tr. 82:21–83:4, ECF No. 24-2 at 10–11; S.C. App. Ct. Unpublished Op. No. 2000-UP-062 (Feb. 8, 2000) 3, ECF No. 27-4 at 78. See also United States v. Grandison, 885 F.2d 143, 147 (4th Cir. 1989) (finding "[w]hile the racial composition of the actual petit jury is not dispositive of a Batson challenge . . . the fact the jury [in this matter which considered the state's use of peremptory challenges against black jurors] included two black jurors is significant"). Finally, "the [United

19

States] Supreme Court has never addressed the potential remedy for a violation of <u>Batson</u> by the defense . . . [and t]he Circuit Courts which have addressed it are split regarding whether a violation of <u>Batson</u> by a defendant's own counsel warrants reversal of the conviction." <u>Clark v. Marshall</u>, No. CV 04-481, 2009 WL 3270923, at ** 18 (C.D. Cal. Oct. 8, 2009) (comparing <u>United States v. Boyd</u>, 86 F.3d 719, 724, 725 (7th Cir. 1996), with <u>United States v. Huey</u>, 76 F.3d 638, 641 (5th Cir. 1996)). "Thus, there is no clearly established federal law, as [determined] by the Supreme Court, that a criminal defendant's conviction cannot stand if defense counsel violated <u>Batson</u>." <u>Id.</u>

### 8. *Trial Counsel's Advice To Petitioner To Not Testify.*

In Ground Eight, Petitioner asserts that trial counsel was ineffective because he "denied" Petitioner his Sixth Amendment right to testify on his own behalf. Memo. In Support of Habeas Pet. 12, ECF No. 1-1. Petitioner had testified at his first trial and wished to do so in the second trial. However, when he spoke with his attorney about it, his attorney told him that "the Solicitor . . . would eat me up on the stand if I got on that stand." PCR Hr'g Tr. 24:4–5, ECF No. 27-3 at 11:

> He say he ain't wanted me to get up there because she would—she would get on me. [The solicitor], she's something, you know. Like during the first trial, she got on me, you know. And he seen how it affected me. So he didn't want me to get up there again.

<u>Id.</u> at 24:21–25:1.

The Magistrate Judge recommends that this claim be dismissed, because "[a]dvice provided by a trial counsel on whether his client should testify is 'a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance,'" and it was not an unreasonable application of the facts or federal law for the PCR Court to find that defense counsel had a reasonable strategic reason for advising Petitioner not to testify. R&R at 27–28, ECF No. 39

(quoting <u>Hutchins v. Garrison</u>, 724 F.2d 1425, 1436 (4th Cir. 1983)). Petitioner's objection simply restates his substantive arguments as to why he believes defense counsel's advice was ineffective assistance. <u>See</u> Pet'r's Objections 4–5, ECF No. 45. After thoroughly and independently reviewing the record, the court agrees with the Magistrate Judge's findings and overrules Petitioner's objection.

## B. Solicitor's Improper Closing Argument

In Ground Nine, Petitioner asserts that the trial court violated his Fifth and Fourteenth Amendment rights when it permitted the solicitor to argue that the job of a defense attorney is "to muddy the waters." <u>See</u> Memo. In Support of Habeas Pet. 13, ECF No. 1-1; <u>see also</u> Trial Tr. 724:11–725:6, ECF No. 26-2 at 58–59. In objecting the Magistrate Judge's recommendation that this claim be dismissed, Petitioner does nothing more than restate the substantive arguments addressed by the Magistrate Judge. <u>See</u> Pet'r's Objections 5, ECF No. 45. The court has independently reviewed the record and the relevant authorities and agrees with the Magistrate Judge's assessment. The objection is overruled.

## C. Trial Court's Denial of <u>Batson</u> Motion

In Ground Ten, Petitioner asserts that the trial court violated his Fourteenth Amendment rights when it denied his <u>Batson</u> motion challenging the solicitor's use of a peremptory challenge to strike a potential juror who was African American. Memo. In Support of Habeas Pet. 15, ECF No. 1-1. Again, Petitioner merely repeats his argument that the solicitor's proffered reason for striking the juror was pretextual. Pet'r's Objections 5, ECF No. 45. The court has independently reviewed the record and is in agreement with the Magistrate Judge that neither the trial court nor the South Carolina Court of Appeals unreasonably applied federal law when they found no violation of <u>Batson</u> here. Petitioner's objection is overruled.

## IV.    CONCLUSION

Respondent's motion for summary judgment, ECF No. 22, is hereby **granted.** Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254 is hereby **dismissed** with prejudice. The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases, as effective December 1, 2009, provides that the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001). The court concludes that Petitioner has not made the requisite showing. Accordingly, the court **declines to issue** a certificate of appealability.

IT IS ORDERED.


/s/ Margaret B. Seymour
United States District Judge


September 24, 2010
Columbia, South Carolina

22